IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                       Case No. 1:22-cr-00361-MLG

MARQUAE KIRKENDOLL,

    Defendant.

**MEMORANDUM OPINION AND ORDER DENYING
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

Defendant Marquae Kirkendoll is charged with multiple counts arising out of the robbery of a postal worker. Doc. 31. Government evidence purportedly tying Kirkendoll to the crime includes, inter alia, locational data obtained through a geofence warrant. Geofencing is a process whereby law enforcement "specifies a location and period of time, and, after judicial approval, companies conduct sweeping searching of their location databases and provide a list of cell phones and affiliated users found at or near a specific area during a given timeframe[.]" Note, *Geofence Warrants and the Fourth Amendment*, 134 HARV. L. REV. 2508, 2509 (2021). The data is typically provided in the form of an anonymized list of accounts. The government then reviews the responsive material, pares it down to accounts of interest, and requests deanonymized information. As is the case here, the data is typically produced in response to a warrant.[1]

---

[1] Whether geofencing falls within the strictures of the Fourth Amendment has been the subject of some debate. Courts have reached varying conclusions and some prominent legal scholars have questioned whether the access of geofence information constitutes a search under the Constitution. *See, e.g.*, Orin Kerr, *The Fourth Amendment and Geofence Warrants: A Critical Look at* United States v. Chatrie, LAWFARE (March 12, 2022), https://www.lawfaremedia.org/article/fourth-amendment-and-geofence-warrants-critical-look-united-states-v-chatrie. As explained below, because a warrant was already issued and approved by a United States Federal Magistrate Judge, the court need not pick a side on the matter.

## BACKGROUND

On January 18, 2022, at approximately 10:03 a.m., a doorbell camera captured two individuals pulling a postal worker out of his mail truck by the back of his shirt, throwing him to the ground, and demanding his postal keys at gunpoint. Doc. 123-1 at 14 ¶ 19. This incident took place near 7510 Domingo Road NE in Albuquerque, New Mexico. *See id.* Video footage indicates that the suspects fled on foot to their parked vehicle, a black Dodge Charger, at 231 Espanola Street. *Id.* ¶ 20. Once in the vehicle, they drove away, with city intersection camera footage capturing the Dodge Charger at the juncture of Louisiana Boulevard ("Louisiana") and Central Avenue ("Central") at approximately 10:05:54 a.m. *Id.*

Following these events, Postal Inspector Kelly McNulty sought a geofence warrant from Google for the following location and times on January 18, 2022: (1) 10:02-10:05 a.m. for a radius of fifty meters around 7510 Domingo Road NE (the site of the robbery); (2) 9:47-10:05 a.m. for a radius of fifty meters around 231 Espanola Street NE (the site of the getaway vehicle); and (3) 10:05-10:06 a.m. for a radius of fifty meters around the intersection of Central and Louisiana (where the Dodge Charger was identified on a traffic camera). *Id.* at 17-18. United States Magistrate Judge Steven Yarbrough signed off on the requested warrant. *Id.* at 1. Kirkendoll subsequently filed a motion to suppress the evidence obtained asserting the warrant violated Fourth Amendment protections against unreasonable searches. Doc. 123.

## ANALYSIS[2]

---

[2] At the suppression hearing on February 29, 2024, the United States did not put forth any witnesses. This decision led to a lively dispute about the burden of proof and the United States' obligations. However, case law is clear on the matter. "The proponent of a motion to suppress has the burden of adducing facts at the suppression hearing indicating that his own rights were violated by the challenged search." *United States v. Eckhart*, 569 F.3d 1263, 1274 (10th Cir. 2009). In the case of a warrantless search, after the defendant makes an initial showing that the Fourth Amendment was implicated, the United States bears "the burden of proving its warrantless actions

2

I.      **Reasonable Expectation of Privacy**

A reasonable expectation of privacy is a prerequisite for a party to claim constitutional protection against a search. *See Katz v. United States*, 389 U.S. 347, 351 (1967) ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected."); *see also United States v. Aguilar*, Cr. No. 10-396-RB, 2010 WL 11622980, at *3-4 (D.N.M. June 24, 2010) (reasonable expectation of privacy triggers Fourth Amendment protection, and where Fourth Amendment applies, warrant is generally required for search) (citing *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) and *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)).

Here, Kirkendoll claims a reasonable expectation of privacy in his location data pursuant to *Carpenter v. United States*, 138 S. Ct. 2206, 2217 (2018). Doc. 123 at 5. The United States does not address this point and instead begins with a probable cause analysis. *See generally* Doc. 134. In similar cases, courts in other districts have assumed without deciding that a warrant is required for the government to obtain geofence location information. *See Matter of Search Information that is Stored at Premises Controlled by Google LLC*, 579 F. Supp. 3d 62, 74, 74 n.14 (D.D.C. 2021); *Matter of Search of Information Stored at Premises Controlled by Google*, 481 F. Supp. 3d 730, 740 (N.D. Ill. 2020). While the question of whether geofence warrants impede on an individual's reasonable expectation of privacy remains "an open question," Note, *supra*, at 2510, the Court gives Kirkendoll the benefit of the doubt and assumes that they do.

---

were justified." *United States v. Goebel*, 959 F.3d 1259, 1265 (10th Cir. 2020). But where, as here, a warrant issued, the defendant bears the burden of proof. *See United States v. Harrison*, 566 F.3d 1254, 1256 (10th Cir. 2009) (citing *United States v. Carhee*, 27 F.3d 1493, 1496 (10th Cir. 1994)).

**II.    Good Faith**

"In reviewing suppression motions, courts have the discretion to proceed directly to an analysis of the good-faith exception without first addressing the underlying Fourth Amendment question." *United States v. Danhauer*, 229 F.3d 1002, 1005 (10th Cir. 2000) (citing *United States v. Leon*, 468 U.S. 897, 924-25 (1984)). The good faith exception to the exclusionary rule permits use of evidence where an officer acts in "objectively reasonable reliance" on a search warrant—even if that warrant later turns out to be lacking in probable cause. *United States v. Pacheco*, 884 F.3d 1031, 1045 (10th Cir. 2018). The government bears the burden of proving the good faith exception applies to bar suppression, *United States v. Corral-Corral*, 899 F.2d 927, 932 (10th Cir. 1990), but "police officers should [generally] be entitled to rely on the probable-cause determination of a neutral magistrate." *Id.* at 939. While that allowance does not provide blanket absolution for unlawful searches, *see Leon*, 468 U.S. at 914-916, "when a search is conducted pursuant to a magistrate's warrant, it is only when an officer's reliance on that warrant is *wholly unwarranted* that good faith is absent, and the evidence acquired should be suppressed." *Pacheco*, 884 F.3d at 1045 (emphasis in original) (internal quotation marks and citation omitted).

Here, the United States argues that the good faith exception applies under the reasoning employed in *United States v. Chatrie*, 590 F. Supp. 3d 901 (E.D. Va. 2022).[3] In *Chatrie*, a detective sought and received a geofence warrant from Google. *Id.* at 906. At the time the detective applied for the warrant, "no court had yet ruled on the legality of such a technique." *Id.* at 938. The detective therefore sought "advice from counsel before applying for the warrant" and "relied on his past experience seeking geofence warrants," which he had done three times before *Chatrie*,

---

[3] Because the Court finds *Chatrie* persuasive in this instance, it does not address the United States' other good-faith argument pertaining to *United States v. McLamb*, 880 F.3d 685, 691 (4th Cir. 2018). *See* Doc. 134 at 12-13.

4

and all were approved. *Id.* The Court found that "in light of the complexities of this case," the three previous approved geofence warrants, and the detective's "consultation with Government attorneys before obtaining those warrants," the detective's "reliance on the instant warrant" was not "objectively unreasonable." *Id.* The good faith exception therefore applied.

The Court finds the result in *Chatrie* to be persuasive despite criticisms regarding its reasoning and approach. *See* Kerr, *supra* note 1. As explained above, geofence warrants are a novel aspect of the present legal landscape, and decisional authority from other jurisdictions has not coalesced to provide a unified approach in considering such warrants. *Compare In the Matter of the Search Warrant Application for Geofence Location Data Stored at Google Concerning an Arson Investigation*, 497 F. Supp. 3d 345 (N.D. Ill. 2020) (granting warrant application), *with In the Matter of the Search of Information that is Stored at the Premises Controlled by Google, LLC*, 542 F. Supp. 3d 1153 (D. Kan. 2021) (denying warrant application). Given this uncertainty and coupled with Officer McNulty's decision to seek counsel's advice, *see* Doc. 134 at 13, the Court cannot say her reliance on Judge Yarbrough's approval was "wholly unwarranted." *United States v. Cardall*, 773 F.2d 1128, 1133 (10th Cir. 1985) ("It is only when [law enforcement's] reliance was wholly unwarranted that good faith is absent."). Accordingly, the Court finds that the good faith exception applies in this case to bar suppression. Kirkendoll's motion is therefore denied. Doc. 123.

It is so ordered.

                                                          _____
                                                      UNITED STATES DISTRICT JUDGE
                                                      MATTHEW L. GARCIA